Good morning. Good morning. I'd like to reserve two minutes for rebuttal. All right. Would you move the microphone just a little closer to you? There you go. Thank you. Okay. I'd like to reserve two minutes for rebuttal. Yes, that's a lot better. Okay. In this case, we have a situation under the Convention Against Torture where the country of the Marshall Islands makes homosexuality illegal. And the immigration judge found that that, in fact, would be per se torture because it would require the respondent to live basically in denial of his fundamental right to express his sexuality for fear of the government enforcing the law against him. Do you have a citation for the statute? For the Marshall Islands statute? No, I do not. Because I'd read in preparing for today, I read a reference that the Marshall Islands changed their law in around 2004, 2005, and so it's no longer illegal. And I scanned the code as best I could online this morning, and I didn't see any reference to it. So I was curious to see if you had a citation you might point us to. No, unfortunately, I did look for one, but I didn't find it. And I'm not sure that the law, you know, the law may have been, as you suggest, but I have not heard of that. And the Department of State report, it expresses the fact that the law is still in existence. So it makes it, it's not. Of course, that same report says that it's not enforced. Well, it does say it's not enforced, which means that the law is still in existence. Right. But you've got to show us more likely than not your client would be tortured if he went back to the Marshall Islands, and if it's not enforced, what basis do you have to say he would likely be tortured? Well, we don't know exactly what that means. Does it mean that you, the law is not enforced because people are not allowed to act in a homosexual manner? And then when a person does act, you know, as their natural orientation, then they would, they could and would be arrested. The Department of State report also says that generally, you know, homosexuals are treated well. But that doesn't mean anything, you know, outside of what is general. So we don't know if generally they're accepted because they don't act in a manner that can be found to be homosexual, or it's just an idea that it's generally, but when you come into actual contact with a human being, we don't know, you know, we don't know. Didn't your client, about 12, 13 years ago, go back to the Marshall Islands for a short while? He did. He went back for about three days, and in that time, he basically hid himself. He didn't go out anywhere. He actually didn't, he went for his mother's funeral, but didn't even go to the funeral for fear of running into trouble, and then met with his sister afterwards to discuss what happened. So it was a very short and very safeguarded trip. But nothing happened to him there, did it? It is correct. Nothing happened to him because he made a point of not being allowed, you know, not being allowed. How long has he been back in the Marshall Islands? About four years now. He was removed in 2009. Is there anything in the record, any affidavits or anything, anything adverse? Has happened to him in the last four years? No. I have had very limited contact with him. As my understanding is, he's in one of the remote areas and comes into the big town very, you know, very rarely, and that's where he's able to use e-mail, and that's how I communicate with him. So that is the issue, is that whether he has to deny his fundamental human right in order to exist in the Marshall Islands. And this Court has found in Bromfield and Karuni that laws against homosexuality are, in fact, torturous and do, in fact, constitute persecution. The difference is, in this case, we don't have a clear finding that there is a law that's being enforced. And isn't that fatal to your claim if you can't establish that we would be compelled to reverse the determination of the BIA? I don't think so, because, again, it comes down to the classic problem of putting him, a person in a double bind, where they're not allowed to act as, you know, in the manner that's fundamental to their nature in order to avoid being thrown into prison for being homosexual. And that classic bind has been found by this Court to constitute persecution. And so given that and the fact that we have credible testimony of torture in the past when he was, in fact, acting as a homosexual, that goes together to show that in order for him to survive, he must, in fact, deny his fundamental nature. Now, it was Karuni and Bromfield that found that laws that prosecute against homosexuals are, in fact, under the ambit of the Convention Against Torture and do constitute torture when applied toward the person. So what we have here is a situation where he must deny his nature in order to avoid persecution. And that itself, as I think that I.J. from the immigration judge found correctly, that constitutes torture per se, because it puts you basically with a sort of Damocles over your head, what do I do, what do I not do in order to avoid going to jail. And then in respect to the Board's decision on that, they cited a matter of J.E. saying that bad conditions in jail or in a prison do not constitute torture, but I think they were actually misquoting or misusing the decision, because that decision was based on the Haitian countries' practice of putting people in jail when they're deported for a crime. And the idea behind that was to protect the public and that conditions in prison could not be called torture. But in this particular case, we're not talking about a public safety issue. We're not talking about a legitimate law. And so, therefore, going into prison by itself would in fact constitute torture. And that is what the I.J. found correctly, I believe. Do you want to address the particularly serious crime issue? You know, I'm not certain that the analysis that we did stands anymore, because, as you know, Silva Trevino has been overturned, and that was basically the case that allowed the courts to look behind the documents to see if it was a particularly serious crime or not. That's what was done here. The court looked at the behavior and then decided that it necessarily was a particularly serious crime. So I think that that whole line of jurisprudence is no longer functional, because the courts are not allowed to look at the documents, look at police reports, et cetera, that were used in that particular case. And then with Moncrief and Deschamps, I think that you're the whole analysis would have to be redone, because you'd have to look at just the Taylor documents that are allowed to be looked at. So I'm. So you're more or less conceding that issue then? Well, what I'm saying is that if you would look at the documents that technically should be allowed now, I don't think that you could necessarily find that it would be a particularly serious crime. You did receive a three-year sentence for it, but that in itself doesn't necessarily make it a particularly serious crime. Well, it was a connective assault with a deadly weapon. Right. But it was also a drunken brawl, which was there was testimony to that effect. So basically what you have are two inebriated men that got into a fight. Does that allow a person, can a person form the intent then to commit a, quote, particularly serious crime in such an inebriated state? And my position would be that no. Do you have any authority? You can cite us where they so held that the drunken brawl or the assault is not a particularly serious crime? No. There's no case that's on point on that issue that I've been able to find. All right. You're down to a little under two minutes, so if you want to reserve. Thank you. May it please the Court, Nicholas Harling for the respondent. In this case, Kanoa failed to present compelling evidence that it was more likely than not that he would be tortured in the Marshall Islands. Although Kanoa is a homosexual, the State Department country report was clear that there are no enforced laws against homosexuality and that homosexuals are accepted within the society there. Moreover, when Kanoa was living in the Marshall Islands as an adolescence, the police were aware of his homosexuality and never harmed him on that basis. Right. But I gather they didn't do anything to help him either. That's true, Your Honor. However, the board correctly noted that any harm that Mr. Kanoa received in the Marshall Islands does not compel the determination that he will be tortured when he returns or is returned as an adult. Would you agree that if there were laws against homosexuality that were enforced, that would be sufficient to meet the required showing? The board has not made a determination on that point, Your Honor, and until they do, I can't speak to whether that would constitute torture or not. Well, if we were to find that the evidence in this case was sufficient to show that there were crimes in the Marshall Islands that precluded or prohibited or criminalized homosexuality, would we be within our jurisdiction to find that there was torture and that the to compel a finding of torture? In that case, it would be proper to remand the case back to the board to determine whether those laws, if they existed, did constitute torture, Your Honor. But if they were enforced, don't our cases indicate that that would be torture if someone were placed into prison simply for being homosexual? Don't our cases kind of dictate that outcome? Because I don't know for sure, Your Honor, I'm hesitant to state one way or the other on that issue of whether it does. But in this case, nevertheless, the record clearly shows that what we have is the State Department country report showing that they're not enforced. We have nothing in the record to the contrary, and that certainly doesn't lead to a determination that there is compelling evidence that such laws do exist and are enforced. Do you know whether the laws exist anymore or not? I do not, Your Honor. I mean, we are at a kind of an odd position here because I looked through. I couldn't find a citation to the law. The country report said the laws didn't reference specifically the laws, but it said any laws were not enforced. I don't know what that means. But it's a little bit curious that we wouldn't have a citation to the statutes one way or the other when it's kind of a pivotal point. Again, Your Honor, I would just point out that it's Petitioner's burden to ---- True, but, you know, you have responded, and the United States would never contest the fact that there was the laws around the books. Well, Your Honor, the record could not be supplemented after it was already presented to the immigration judge and the board. Well, that wouldn't be supplementing the law to give us a statute. Those are things of which we can take judicial notice. So that would not be supplementing the record. I thought of that as well, Your Honor. But I was a little curious, and I'm sure because of the unique position of the Marshall Islands vis-à-vis the United States, it has a, I believe, a confederation or some sort of relationship. I'm not sure whether the Court can take judicial notice of the Marshall Islands statutes. We could take judicial notice of any statute of any country. Yes, Your Honor. I mean, do you have any authority to the contrary? I do not, Your Honor. With respect to the particularly serious crime determination, the agency correctly applied or applied the correct legal standard in determining that his convictions for assault with a deadly weapon and battery constituted particularly serious crimes, which in turn rendered him ineligible for withholding of removal. Because he's a criminal alien, the Court can only review whether the agency applied the correct legal standard, and the Court may not reweigh the evidence. The agency, in the matter of NAM, determined that proper considerations to consider are the nature of the conviction, the type of sentence imposed, and the circumstances underlying the facts of the conviction. And that's exactly what the agency did in this case. It looked at the type of sentence imposed. It noticed that there was a three-year sentence enhancement. And also, in the circumstance. Three-year enhancement, wasn't it? I believe it was a three-year enhancement, Your Honor. It was. The two charges were the sentence for the two separate charges were two concurrent three-year sentences in addition to a three-year enhancement, which led to a six-year term. I think the Petitioner is objecting to the use of the enhancement as a basis to find a particularly serious crime. Do you have any authority that says it's okay to consider an enhancement for that purpose? What Petitioner argued was that the enhancement was improper, or what the law states is the enhancement is improper to consider whether this case or whether these convictions are per se particularly serious crimes. To be a per se particularly serious crime, the crime has to carry a sentence, or the crime has to carry a sentence of five years or more. In this case, it was six years. However, the Court has held that enhancements cannot be used for getting up to that five-year term. The Board and the agency did not do that. What they did was they noted that it's not per se, but they then used the enhancement to consider the type of sentence imposed. And there's nothing improper with that, Your Honor. Additionally, the agency looked to the circumstances and underlying facts of the conviction and noted that the Petitioner twice kicked his victim when he was defenseless on the ground. So in that way, nothing that the Board considered in reaching its particularly serious crime determination was improper. Mr. Dixon says this was just a drunken brawl, so that doesn't show any intent to be particularly serious. Well, it was particularly serious enough for a bystander to call the police, Your Honor. I'm not sure that a drunken brawl gets you a pass. Well, obviously, when people often get police reports on misdemeanor crimes and all that, I'm not sure that that should be our measuring stick. I'm sorry. I'm not sure I follow, Your Honor. Well, I mean, the fact that a bystander called the police is not remarkable. Perhaps not. In terms of that, I don't think there's a case you have that says that because somebody called the police, it indicates that we should consider it a particularly serious crime for the purposes of the Immigration and Naturalization Act. I don't, Your Honor. However, I also, there's nothing to show that it was improper for the Board to consider the circumstances of the assault or the sentence imposed by the trial judge. Any further questions? If the panel has no further questions, the Government would request that the petition for review be denied. Thank you. The Government has argued, or the Board has found, that because the law against homosexuality is not enforced, and that in the Department of State report, generally homosexuals are treated well, but this Court has never found that the Department  of State reports can be used to show what will happen to a specific person at a specific time. They're used to show general country conditions, pattern, and practice. So the reliance on the Department of State report to show that my client would not be prosecuted and, therefore, tortured in Marshall Islands is not sufficient. What we do have in this case is a long history of very bad treatment by people in the continual long history of the police being aware of that, and yet not doing anything to stop it. In fact, when my client was attacked and the police came by, they would laugh at him and tell him to stop acting gay. And so there were also no police reports ever made because the police did not, you know, refused basically to make them, finding that if you just don't act gay, you'll be fine. But this is when he was 14 years old, right? Yes. It was during the time from, what, he was like 10 to about 15, yes. Now he's, what, 47, 48? Right. But at that time, he was living homeless on the beach, having been rejected by his family. He's returned to the Marshall Islands, still being rejected by his family, and still basically in the same position of not having any income, not having any home. So the board saying that he's a self-sufficient adult, I think, is speculation on their part, because it doesn't purport with what actually is going on with this human being, in that he really has no resources and no anything. So the reliance on the, quote, government is not going to enforce their own law, and, oh, we have this, you know, appearance of accepting people generally, does not say much about the nature of Mr. Canoe and what will happen to him in the Marshall Islands. And the lack of a police, you know, police reports or whatnot that was commented on in the Department of State report also, again, is not really proof of anything that would make him safe in Marshall Islands. It's just as really proof that the police don't find that it's something that they feel needs to be reported on. And this Court has said that those kinds of general comments or country conditions cannot be specifically used to show what will happen to my client. So I just want to make sure I understand the relief you're seeking here today. In terms of the claims about the illegality of, or perhaps illegality of homosexuality in the Marshall Islands, you're talking about your convention against torture claim, correct? That's correct. And then the particularly serious crime elements only go to asylum and withholding of removal, right? That is correct. All right. Very good. Thank you. Thank you. The case is here to be submitted for decision.
judges: Thomas, Gilman, Rawlinson